Lionel Pye,

    Plaintiff,

v.                                          **ORDER**

NuAire, Inc., a/k/a NuAire
International, Inc., and
Ken McKnight,

    Defendants.

    Stacey R. Everson, Esq., Stephen W. Cooper, Esq. and The Cooper Law firm, Loring Green East, 1201 Yale Place, Suite A-100, Minneapolis, MN 55402, counsel for plaintiff.

    Ansis V. Viksnins, Esq., Christopher A. Grgurich, Esq. and Lindquist & Vennum, 80 South Eighth Street, Suite 4200, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court upon the motion of defendant NuAire, Inc. ("NuAire") for summary judgment. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants NuAire's motion.

## BACKGROUND

This employment dispute arises out of NuAire's November 19, 2007, termination of plaintiff Lionel Pye ("Pye"). NuAire is a Minnesota corporation that manufactures laboratory equipment. (Compl. ¶ 2.) On July 21, 2007, NuAire hired Pye, an African-American man, as a temporary employee to work in its metal

finishing department. (Pye Dep. 20.) After a three-month observation period, NuAire hired Pye as a regular, full-time employee. (See id. at 21.)

On October 22, 2007, Pye met with Cheryl Holladay ("Holladay"), NuAire's payroll administrator, to complete paperwork. (Holladay Dep. 58.) At the meeting, Pye gave Holladay an employment verification form (the "Form") from the Hennepin County Human Services Department. (Id.; Pye Dep. 83.) Pye asked Holladay to complete the Form so he could obtain emergency housing assistance and told her that the deadline for filing the Form was quickly approaching. (Pye Dep. 110.) The Form asked Pye's employer to verify the dates and gross amounts of his first two paychecks. (Viksnins Aff. Ex. C.) Holladay told Pye that she could not complete the Form because NuAire had not yet processed his first paycheck as a regular, full-time employee. (Pye Dep. 111-12; Holladay Dep. 61-62, 106-07.) Pye agreed to leave the Form with Holladay so she could complete it when the information became available the following week. (Pye Dep. 111-12; Holladay Dep. 62.)

On October 30, 2007, Pye went to Holladay's office several times to retrieve the Form, but Holladay had not completed it. (Pye Dep. 122-23.) Pye again explained his housing situation to Holladay and reminded her of the imminent filing deadline. (Id. at

124.) Holladay allegedly told Pye that "she didn't care about [his] situation" and called the Form "dumb." (Id.; Holladay Dep. 86.)

When Pye returned to Holladay's office shortly thereafter, Holladay was sitting at her desk with her head down, reviewing papers. (Pye Dep. 125.) As he entered the office, Pye claims that he heard Holladay call him a "nigger goon." (Id.) When Holladay realized Pye was present, she allegedly grabbed the Form, signed it, faxed it to Hennepin County and handed it to Pye. (Id. at 126.) Pye noticed, however, that the second page of the Form remained incomplete. (Id. at 128-29.)

Pye left Holladay's office and told his supervisor, Ken McKnight ("McKnight") that Holladay had acted rudely and refused to complete the Form. (Id. at 130.) McKnight spoke with Holladay and later instructed Pye to go back to Holladay's office. (Id.) Pye claims that when he returned, Holladay told him, "I never should have treated you that way. There's no cause for the way I treated you. Sorry for what happened. Give me your papers. I'll take care of them and bring them out to you." (Id. at 131.)

On November 14, 2007, Hennepin County informed Pye that it had not received the second page of the Form and that his application for emergency housing assistance was denied. Later that day, Pye gave McKnight a written complaint concerning Holladay's alleged

racist statement and failure to complete the Form. (Id. at 154; Viksnins Aff. Ex. D.) McKnight immediately forwarded the complaint to Vikki Johnson ("Johnson"), NuAire's human resources manager.

The following day, Johnson met with Holladay, who admitted calling the Form "dumb" but denied making the racist comment. (Johnson Dep. 199; Holladay Dep. 72.) Johnson then spoke with Pye in the presence of McKnight.[1] According to Pye, Johnson asked him what he wanted and how she could make the situation "go away." (Pye Dep. 169.) Pye responded that "he just wanted to be helped" and noted that he had previously requested a different position at NuAire. (Id.) Pye claims that Johnson then "just randomly started saying different jobs, this type of job, a job with a company car, a job with benefits, a job with this, and I stated to her I didn't want nothing handed, but I said a job with a company car wouldn't be bad." (Id. at 169-71.) When Johnson inquired if "money would make this better[?]," Pye responded, "[i]f [that] is how you handle

---

[1] The parties dispute the content of the November 15, 2007, discussion between Pye and Johnson. Johnson alleges that after she told Pye that his complaint could not be verified because there were no witnesses, Pye repeatedly stated, "we have to settle this." (Johnson Dep. 314-17.) When Johnson asked Pye what he meant, Pye told her that he sought money, a promotion or a company car, and that "a million-dollar company like NuAire ... could go under if he wasn't taken care of." (Id. at 318, 332, 347-48; Viksnins Aff. Ex. J at 64; McKnight Dep. 47.) Johnson interpreted Pye's statement as a threat to sue NuAire if the situation was not resolved in his favor, and later relayed her belief to James Peters, NuAire's Vice President. (Johnson Dep. 346, 348, 352; Viksnins Aff. Ex. J at 62.)

4

situations like this." (Id. at 171.) But, Pye told Johnson, "I wasn't there looking for money. I was trying to get the situation solved." (Id. at 172.)

Thereafter, Johnson sent a report to James Peters ("Peters"), NuAire's Vice President. After reviewing the report, Peters concluded that Pye had coercively attempted to gain monetary and employment benefits from NuAire and decided to terminate his position. (Peters Dep. 39, 61-62.) On November 19, 2007, McKnight informed Pye of Peters's decision. (Pye Dep. 178-79.)

On November 13, 2008, Pye filed a complaint against NuAire,[2] alleging race discrimination, hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Minnesota Human Rights Act ("MHRA"), and various common law tort and negligence claims. The court now considers NuAire's December 3, 2009, motion for summary judgment.

## DISCUSSION

I.  **Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, deposition, answers to interrogatories, and admissions on file,

---

[2] In addition to NuAire, Pye's complaint named McKnight as a defendant. (Compl. 1.) On January 8, 2010, Pye voluntarily dismissed all claims against McKnight. (Pl.'s Mem. Opp'n [Doc. No. 29] at 16.)

5

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II. Title VII and MHRA Claims**

    **A. Administrative Exhaustion**

As a preliminary matter, NuAire urges the court to dismiss Pye's Title VII claims because he has not filed a charge with the Equal Employment Opportunity Commission ("EEOC"). Title VII plaintiffs "must exhaust administrative remedies before bringing

suit in federal court." Cottrill v. MFA, Inc., 443 F.3d 629, 634 (8th Cir. 2006). This requirement is not jurisdictional in nature, however, and is subject to waiver, estoppel and equitable tolling. See Gordon v. Shafer Contracting Co., 469 F.3d 1191, 1194 (8th Cir. 2006) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)).

Pye argues that NuAire has waived its administrative exhaustion argument by failing to previously raise this issue. NuAire's answer, however, noted that Pye had not exhausted his administrative remedies. (Answer [Doc. No. 2] ¶ 29.) Nevertheless, deciding the merits of Pye's Title VII claims along with his MHRA claims promotes judicial economy and efficiency.[3] Accordingly, the court will not dismiss Pye's Title VII claims for failure to exhaust administrative remedies.

**B. Race Discrimination**

Pye first alleges that NuAire unlawfully discharged him on the basis of race, in violation of Title VII and the MHRA. See 42 U.S.C. § 2000e-2(a)(1) (prohibiting employer from discharging any individual because of race); Minn. Stat. § 363A.08 subdiv. 2(2) (same). To survive NuAire's motion for summary judgment, Pye must

---

[3] The court analyzes Title VII and MHRA discrimination and retaliation claims under the same framework. See Hervey v. County of Koochiching, 527 F.3d 711, 721 (8th Cir. 2008) (hostile work environment); Riser v. Target Corp., 458 F.3d 817, 819-20 & n.2 (8th Cir. 2006) (race discrimination); Thorn v. Amalgamated Transit Union, 305 F.3d 826, 830 (8th Cir. 2002) (retaliation).

7

either present direct evidence of discrimination or establish an inference of unlawful discrimination through the McDonnell Douglas analysis. See Arraleh v. County of Ramsey, 461 F.3d 967, 974-75 (8th Cir. 2006).

### 1. Direct Evidence

Pye argues that Holladay's alleged racist comment constitutes direct evidence of unlawful race discrimination. Direct evidence shows "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Humphries v. Pulaski County Special Sch. Dist., 580 F.3d 688, 692 (8th Cir. 2009) (citation omitted). However, "not every prejudiced remark made at work supports an inference of illegal employment discrimination." Arraleh, 461 F.3d at 975 (citation and internal quotation omitted). "Direct evidence does not include stray remarks in the workplace, statements by nondecisionmakers or statements by decisionmakers unrelated to the decisional process itself." Twymon v. Wells Fargo & Co., 462 F.3d 925, 933 (8th Cir. 2006) (citation and internal quotations omitted).

It is undisputed that Holladay had no supervisory authority over Pye or any other NuAire employee, and that she did not participate in the decision to terminate Pye's employment. (Holladay Dep. 35, 137, 153-55, 158.) Consequently, Pye cannot

8

establish a causal link between Holladay's alleged comment and his termination. Accordingly, the court determines that Holladay's comment is not direct evidence of discrimination. <u>Cf.</u> <u>Twymon</u>, 462 F.3d at 934 (no direct evidence when alleged discriminatory statements by decisionmakers unrelated to termination); <u>Canady v. Wal-Mart Stores, Inc.</u>, 440 F.3d 1031, 1034 (8th Cir. 2006) (racially offensive comments by decisionmaker who was not involved in termination are not direct evidence).

### 2. **McDonnell Douglas**

Since no direct evidence exists, the court evaluates Pye's claims under the <u>McDonnell Douglas</u> burden shifting analysis. Under that framework, Pye must first establish a prima facie case of discrimination. <u>See</u> <u>Humphries</u>, 580 F.3d at 692. NuAire then must articulate a legitimate, nondiscriminatory reason for its actions. <u>See</u> <u>id.</u> at 692-93. The burden then shifts back to Pye to produce evidence demonstrating that NuAire's reason is pretext for unlawful discrimination. <u>See</u> <u>id.</u> at 693.

To establish a prima facie case of race discrimination, Pye must show that (1) he is a member of a protected class, (2) that he was meeting his employer's legitimate job expectations, (3) that he suffered an adverse employment action, and (4) that similarly situated employees outside the protected class were treated differently. <u>See</u> <u>Fields v. Shelter Mut. Ins. Co.</u>, 520 F.3d 859, 864 (8th Cir. 2008). The first three elements are undisputed.

Pye's claim fails because he offers no evidence that similarly situated employees outside the protected class were treated differently than him. Pye states that NuAire fired a disproportionately high number of African-American employees and gave less-experienced Caucasian employees training and promotions. (Pl.'s Exs. 9 & 10; Pye Dep. 60.) Pye also argues that Holladay treated Caucasian employees differently than him. However, these bald assertions, without more, are insufficient to create genuine issues of material fact.[4] See Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 913 (8th Cir. 2006) (plaintiff must present evidence supporting disputed material facts). Moreover, to prove a discriminatory discharge claim, Pye must show that "similarly situated employees were involved in or accused of the same or similar conduct and [were] disciplined in different ways." Id. (alteration in original) (citation and internal quotation omitted). Pye has not identified a single NuAire employee who meets this criteria. For these reasons, Pye's race discrimination claim fails at the prima facie stage and summary judgment is warranted.

---

[4] While Pye offers NuAire's responses to his interrogatories to establish that NuAire fires a disproportionate number of African-Americans, this evidence does not support his assertion. (See Pl.'s Exs. 9 & 10.) Rather, the evidence only indicates that in the three-year period prior to November 19, 2007, NuAire fired forty-two employees - including Pye - of which twenty-five were "White," twelve were "Black," and five were other races. (Id. at Ex. 9.) These figures do not show that NuAire fires African-Americans at a greater rate than employees of other races.

### C. Hostile Work Environment

A racially hostile work environment violates Title VII and the MHRA. See O'Brien v. Dep't of Agric., 532 F.3d 805, 809 (8th Cir. 2008) (Title VII); Williams v. Metro. Waste Control Comm'n, 781 F. Supp. 1424, 1426 (D. Minn. 1992) (MHRA). To establish a race-based hostile work environment claim, Pye must demonstrate that "(1) he is a member of a protected group, (2) he [was] subjected to unwelcome race-based harassment, (3) the harassment was because of his membership in the protected group, and (4) the harassment affected a term, condition or privilege of his employment." Carpenter v. Con-Way Cent. Express, Inc., 481 F.3d 611, 617-18 (8th Cir. 2007). "A hostile work environment is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment as viewed objectively by a reasonable person." Id. at 618 (citation and internal quotation omitted). "To be actionable, the conduct complained of must be extreme in nature and not merely rude or unpleasant." Id. In other words, "[a]llegations of a few isolated or sporadic incidents will not suffice." Id.

Pye alleges that a hostile work environment existed at NuAire as evinced by Holladay's alleged racist comment, his termination, and Johnson's accusation that he engaged in coercion. The court disagrees. A reasonable person would not consider these incidents

11

so extreme or severe as to create an abusive working environment. Compare Bainbridge v. Lofredo Gardens, Inc., 378 F.3d 756, 759 (8th Cir. 2004) (racial slurs made once a month during two years of employment insufficient to establish objectively hostile work environment) with Green, 459 F.3d at 911-12 (multiple racial slurs combined with physical threats established hostile work environment). Therefore, Pye has not shown that the alleged harassment at NuAire was so severe or pervasive as to constitute a racially hostile work environment, and summary judgment is warranted on this claim.

**D. Retaliation**

Title VII and the MHRA also prohibit an employer from retaliating against an employee who files a charge of discrimination. See 42 U.S.C. § 2000e-3(a); Minn. Stat. § 363A.15(1). To establish a prima facie case of retaliation, Pye must show that (1) he engaged in protected conduct, (2) reasonable employees would have found the challenged retaliatory action materially adverse, and (3) the materially adverse action was causally linked to the protected conduct. See Recio v. Creighton Univ., 521 F.3d 934, 938-39 (quotation and citation omitted).

Pye claims that his complaint to McKnight constituted protected conduct, and that NuAire terminated him because of his complaint. In response, NuAire contends that Pye did not engage in protected conduct because his complaint was neither reasonable nor

made in good faith. NuAire also argues that Pye's alleged coercive behavior constituted intervening conduct that negates a causal connection between his complaint and termination. See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (intervening unprotected conduct erodes causal connection between protected conduct and termination).

The court need not consider whether Pye can establish a prima facie case of retaliation, however, because his claim fails at the pretext stage. NuAire has articulated a legitimate, nondiscriminatory reason for its actions. Specifically, NuAire states that it terminated Pye because he coercively attempted to gain employment and monetary benefits. To show that NuAire's proffered reason is pretextual, Pye must discredit NuAire's asserted rationale and show that the circumstances permit drawing a reasonable inference that the real reason for his termination was retaliation. See Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 918 (8th Cir. 2007) (citing Twymon, 462 F.3d at 935). Pye argues that NuAire made job and monetary offers to him and that he did not engage in threatening behavior. (See Pye Dep. 166-72.) Pye has not, however, produced evidence indicating that NuAire did not honestly believe his actions were coercive. See Twymon, 462 F.3d at 935 ("A proffered legitimate, non-discriminatory reason for termination need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of the

13

termination."). Moreover, no evidence before the court suggests that retaliation was the true cause of NuAire's decision to terminate Pye. Accordingly, the court grants summary judgment on this claim.

**III. Common Law Claims**

Pye next asserts common law tort and negligence claims against NuAire, including intentional infliction of emotional distress ("IIED"), intentional interference with an economic advantage, negligence, and negligent supervision, training, retention and hiring.[5] Pye, however, presents no evidence or arguments in support of his negligence claims and intentional interference with an economic advantage claim. Pye, therefore, fails to raise genuine issues of material fact with respect to these claims, and summary judgment is required. See Celotex, 477 U.S. at 324

---

[5] NuAire argues that Pye's common law claims are preempted by the MHRA. Preemption under the MHRA occurs if "(1) the factual basis and injuries supporting the common law claim also would establish a violation of the MHRA, and (2) the obligations the defendant owes to the plaintiff, as a practical matter, are the same under both the common law and the MHRA." Pierce v. Rainbow Foods Group, Inc., 158 F. Supp. 2d 969, 975-76 (D. Minn. 2001); see Minn. Stat. § 363A.04 ("[A]s to acts declared unfair by [the MHRA], the procedure herein provided shall, while pending, be exclusive.").

Pye's common law claims rely on the same facts set forth in his MHRA claims. Furthermore, Pye has not identified any obligations owed to him by NuAire separate from those created by the MHRA. Accordingly, the court determines that Pye's common law claims are preempted by the MHRA, and summary judgment is also warranted on this basis. See Moss v. Advance Circuits, Inc., 981 F. Supp. 1239, 1252 (D. Minn. 1997) (common law claims preempted when plaintiff failed to identify common law duty independent from duty created by MHRA).

(nonmoving party must go beyond pleadings and, through evidence, designate specific facts showing genuine issue for trial).

With respect to his IIED claim, Pye states that he suffered debilitating stress as a result of Holladay's alleged racist comment and the denial of his emergency housing assistance application. To establish an IIED claim against NuAire, Pye must show that NuAire engaged in conduct that was (1) extreme and outrageous, (2) intentional or reckless, and (3) caused severe emotional distress. See Langeslag v. KYMN Inc., 664 N.W.2d 860, 864 (Minn. 2003) (citation omitted). Conduct that is extreme and outrageous "must be so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 439 (Minn. 1983) (citation and quotation omitted).

Even if Pye could show that he suffered severe emotional distress, he cannot establish the first element of an IIED claim. No evidence before the court indicates that NuAire's conduct rose to the level of "extreme and outrageous." See Langeslag, 664 N.W.2d at 865 (liability for IIED does not extend to insults, indignities, threats, annoyances or petty oppressions); Hubbard, 330 N.W.2d at 439 (limiting IIED to cases "involving particularly egregious facts"). Therefore, Pye's IIED claim fails on the merits.

## CONCLUSION

Accordingly, based on the above **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. No. 23] is granted. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 15, 2010

                                           <u>s/David S. Doty</u>
                                           David S. Doty, Judge
                                           United States District Court